5 So.2d 632

### JOHNSON v. STATE.

6 Div. 873.

Supreme Court of Alabama.

Dec. 18, 1941.

Rehearing Denied Jan. 29, 1942.

Edw. H. Saunders, of Bessemer, for appellant.

Thos. S. Lawson, Atty. Gen., and Noble J. Russell, Asst. Atty. Gen., for the State.

GARDNER, Chief Justice.

The appeal is from a judgment of conviction for the offense of rape, with infliction of the death penalty. The victim of the assault (Mary Sloan), was a young white woman, eighteen years of age. The crime was committed near 1 A. M. of the morning of January 14th, 1941. The young couple (the husband was also near eighteen), were in bed in their two-room house in the City of Bessemer, with their nine months old baby. A small electric light was left burning in the bedroom.

The husband had left, as usual, a shot gun on the floor by his bed. The rapist at once discovered the gun and took possession. Mary Sloan states he also had a pistol. With the use of these weapons and threats to kill all three if not gratified in his desires, the rapist accomplished his purpose upon the young woman, took some small change from the purse and escaped. The details of this crime are most revolting and are better left unrelated here.

There was much conversation and in all both of these young people estimate the criminal was in the house nearly an hour and with good opportunity for identification. They each are positive in their identification of the defendant.

The defense was an alibi, supported by testimony of himself, his mother and wife that he was at his home at the time. There was no disputing the fact a horrible crime of criminal assault had been committed. Def...ndant also offered the testimony of another negro, one Hambright, to the effect that while he was under arrest for the crime, the husband had identified him as the criminal, which Sloan denies.

The only question, therefore, for consideration of the jury was the matter of identification. The record discloses that during a period of eighteen days from January 13th, 1941, to and including January 31st, 1941, there were attacks made upon white women in the City of Bessemer, by a negro man. One occurred on the night of January 13th within an hour or two of the rape of Mary Sloan. Mrs. Wright makes positive identification of the defendant as the man with whom she struggled on the night of January 13th. She saw him in the "light of three lights, the light shone right in his face. * * * It is a fact that I looked him in his eyes and he looked at me".

Next was on the night of January 26th, when a Mrs. Harrison aroused her husband as a man tried to pull her from the bed. Mrs. Harrison could only see the body of a man and could not identify, as the excitement appears to have rendered her unconscious. But her husband fought off the intruder, at last got on the light and posi-

tively identified the defendant as the man that attempted an attack upon his wife.

On the night of January 31st a negro man attempted an assault upon a Mrs. Smith. She could only see he was a negro as distinguished from a white man. The intruder had entered the house by means of a ladder and escaped as Mrs. Smith's brother and husband were aroused. Though the Smiths were unable to identify the intruder their screams had aroused their near next door neighbors, Mrs. Herring and her husband, who saw a negro man at the ladder of the Smith house. The husband fired a shot gun at him with bird shot, and Mrs. Herring went out to "get the law", as she expressed it, and met the intruder between the sidewalk and her house. She testifies: "He just backs up against the house and looked at me real hard, trying, I guess, to scare me and make me leave; but I didn't; I stood and looked at him". She was intent upon the matter of identification and as a witness states this defendant is the man.

But there was still further identification when the purse which was found at the foot of the ladder was discovered to contain a registration card, bearing the name, Bradley Johnson and a driver's license in the name of Frank Johnson, with uncontradicted proof this defendant had gone by both names. It was the finding of this purse and the address on these certificates which doubtless lead the officers to the arrest of this defendant.

■ The argument is advanced that proof of these other, though similar offenses, was irrelevant and inadmissible. The principle here controlling, however, is well expressed in 20 Amer.Jur. p. 292, as follows: "The general rule that evidence of separate and independent crimes is inadmissible to prove the guilt of a person upon trial for a criminal offense is subject to a well defined exception with respect to proof of the identity of the accused. The broad rule that where evidence tends to aid in identifying the accused as the person who committed the crime under investigation, it is admissible, in spite of the fact that it tends to show that the accused is guilty of other crimes for which he is not on trial".

■ Of course, for the admissibility of such proof the question of identity must be an issue in the case. 20 Amer.Jur. p. 293. The text is well supported by the authorities generally (Paul Whiteman v. State, 119 Ohio St. 285, 164 N.E. 51, 63 A.L.R. 595 and citations noted; People v. Thau, 219 N.Y. 39, 113 N.E. 556, 3 A.L.R. 1537 and cases noted), and by the decisions of our own court. Yarborough v. State, 41 Ala. 405; Mason v. State, 42 Ala. 532; Gassenheimer v. State, 52 Ala. 313; Curtis v. State, 78 Ala. 12; Miller v. State, 130 Ala. 1, 30 So. 379; Mitchell v. State, 140 Ala. 118, 37 So. 76, 103 Am.St.Rep. 17; Scott v. State, 150 Ala. 59, 43 So. 181.

In this latter case the trial judge was careful to instruct the jury the proof was for the limited purpose of identification only, and so in the instant case the trial judge did likewise in a very clear and emphatic manner as to each separate offense above enumerated.

■ The case of Wilkins v. State, 29 Ala.App. 349, 197 So. 75, bears some analogy. And in Wilder v. State, 1 So.2d 317, the Court of Appeals had a similar question here presented. See, also, the recent United States Supreme Court case of Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. ——. The other offenses here shown were all of similar character, committed within the same territory and all within a period of eighteen days. It is to be noted also that in each instance the victim was a white woman, which bears significance in view of defendant's remark concerning white women as testified to by Mrs. Sloan, hereinafter set out. The only issue was one of identification, and under the principle of the above-noted authorities this proof was properly admitted.

■ On cross-examination the defendant was asked by the solicitor had he been previously convicted in that court and sent to the penitentiary, to which he answered in the affirmative. Defendant objected "to the form of the question". The objection was overruled without error. Fondren v. State, 204 Ala. 451, 86 So. 71.

■ Upon defendant's arrest on the morning of February 1st, 1941, he was incarcerated in the city jail of Bessemer and that afternoon carried to the jail in Birmingham. While in the Bessemer jail he confessed to this particular crime as well as to some of the others above enumerated. The rule in this State as to the admissibility of evidence as to confession is well understood. Prima facie, confessions are involuntary, and there must be

evidence addressed to the trial judge rebutting that presumption, and showing prima facie that the confession was voluntarily made, unless of course the circumstances attending the confession discloses their voluntary character. Godau v. State, 179 Ala. 27, 60 So. 908; Stewart v. State, 231 Ala. 594, 165 So. 840; Dyer v. State, 241 Ala. 679, 4 So.2d 311.

■ And after the confessions have been admitted, the jury may consider the circumstances under which the confessions were obtained, and the appliances by which they were elicited, including the situation and mutual relation of the parties, in exercising their exclusive prerogative of determining the credibility of the evidence, or the weight to which it is properly entitled in controlling the formation of the verdict. Redd v. State, 69 Ala. 255.

■ Before proof of the confession the State offered the testimony of the officers to the effect that it was not the result of threats or abuse or by reward or the hope thereof so offered or held out. The arresting officer testified defendant talked voluntarily and did more talking than the officers. Under our authorities a prima facie case was made out for the admission of the confession and no error here intervened. Later when carried to the Birmingham jail defendant made statements to the officers which were reduced to writing and signed by him. Like proof was made as to their voluntary character. But these statements in substance were but reiterations of what had been verbally stated to the Bessemer officials and add little to the sum total of the proof as to these confessions.

■ Defendant, as a witness in his own behalf, repudiated all confessions and insisted they were the result of fear and of punishment inflicted upon him by the officers. If punished as he insists, his body would clearly have borne the marks. Not only the pictures taken of his body at or about the time of these confessions, but the testimony of the county physician who examined him utterly refutes any such punishment as testified to by him. All of this was proper for the jury's consideration, but none of it sufficed for the exclusion of the proof. Defendant lays stress upon Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; White v. Texas, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Canty v. Alabama, 309 U.S. 629, 60 S. Ct. 612, 84 L.Ed. 988; Brown v. Mississippi, 297 U.S. 278, 279, 56 S.Ct. 461, 80 L.Ed. 682; Vernon v. Alabama, 313 U.S. 540, 61 S.Ct. 833, 85 L.Ed. 1509, each of which we have carefully examined. But these cases bear no resemblance on the facts to the instant case, and upon this question each case must rest upon its own peculiar details and circumstances.

In the cases noted the Supreme Court of the United States reached the conclusion that the confessions were clearly shown to have been involuntarily obtained and in addition constituted a vital chain in the State's case for conviction. Indeed these authorities are rested upon the doctrine that the accused was in this manner deprived of due process of law as guaranteed by the Federal Constitution. Illustrative is the expression of the court in Brown v. Mississippi, supra [297 U.S. 279, 56 S.Ct. 465, 80 L.Ed. 682]; "It would be difficult to conceive of methods more revolting to the sense of justice than those taken to procure the confessions of these petitioners, and the use of the confessions thus obtained as the basis for conviction and sentence was a clear denial of due process."

Nothing similar to such a situation is here presented.

There is no proof of any illegal methods to obtain confessions—unless indeed the testimony of defendant is taken to the exclusion of the officers—testimony that is unsupported by other proof and refuted by the physical facts.

Nor did the confession form the basis of a conviction. The State had established the identity of this defendant as the perpetrater of the crime by proof most convincing and the matter of confession was but cumulative and approached what might properly be termed supererogation. Nor was this defendant ignorant and helpless. He was a vigorous young man 24 years of age making good wages at the Pullman Company plant, could read and write and appears to express himself in a manner above the average of his race.

■ Our authorities are clear to the point that confessions are not rendered involuntary by the mere fact they are made to officials having their legal custody (Redd v. State, supra), and any argument based upon the theory that the above-cited decisions of the United States Supreme Court are to the contrary, is, we think, wholly unjustified.

Indeed, the very recent case by the Supreme Court of United States of Lisenba v. People of State of California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. ——, is a complete answer to any such contention.

■ Counsel lays some stress upon the fact that the acting Chief of Police of Bessemer denied to Attorney Ball, associated with the firm of Ross, Ross & Ross, the right to see defendant immediately or very early following his incarceration. It may be conceded the request should have been granted (Title 41, § 223, Code 1940), and Mr. Ross, after obtaining an order from the trial judge, was permitted, after a short delay, to which he acceded, to see defendant in the Birmingham jail. But it appears undisputedly that the request bore no relation to defense of defendant on this or any criminal charge. His wife and mother merely were seeking his signature to obtain wages due—that and nothing more. Mr. Ross states that he told the solicitor the purpose of the visit had no connection with defense of the case; that he had no such idea in mind, but was only requested to get the order for his wages and no effort was made to employ that firm or any attorney whatever, though the mother and wife of defendant visited him often in the Birmingham jail.

His defense appears to have been vigorously prosecuted by counsel appointed by the court. The erroneous conduct of the acting Chief of Police can, therefore, bear no relation to this case, nor in any manner affect the result.

The series of crimes in Bessemer within so short a period of time were of a revolting character, and this without regard to any question of race or color. The particular offense against the young woman here involved was peculiarly shocking in the extreme. In his zeal to capture the real criminal the acting Chief of Police overstepped his bounds, but as the purpose of the visit had no bearing upon the case here involved, we cannot see that his conduct, resulting in a short delay, can be said to be prejudicial.

■ The question of due process is fundamental, sweeping aside mere procedural matter, but is not concerned with mere irregularities which do not form the basis of conviction.

■ The solicitor too was overzealous in his argument to the jury when he said in effect that counsel for defendant, though doing all they could to acquit the defendant, yet down in their hearts they knew he deserved the death penalty. This statement was highly improper. Birmingham, Ry. Light & Power Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann.Cas.1914C, 1037, but under all the circumstances of this case, the injury, if any, was not ineradicable. The trial judge sustained the objection and in addition strongly and emphatically condemned this remark as improper and wholly unjustified from two stand points: First it was a remark concerning which the solicitor could not possibly have any knowledge, and secondly, in no event would that be a matter which could concern the jury. Upon due consideration of the emphatic and earnest disapproval of the trial judge and his admonishment to the jury to disregard any such remarks, we are persuaded, however much we may likewise disapprove, that under the circumstances of the case, the effect of any such improper remark was sufficiently removed. As we have previously observed the sole question was one of identification which was established by most convincing proof, and the jury, as reasonable intelligent men, must be presumed to have correctly evaluated the remark and given due heed to the admonition of the trial judge and have noted his courteous but nevertheless plain rebuke to the solicitor. No error to reverse here appears.

■ This court has often condemned any argument which appeals to race prejudice, and citation of our cases is unnecessary. As we gather from the record the next remark to which objection was interposed was when the solicitor stated: "Do you know why I hate to say this, he was out after white women". The court answered that he considered the solicitor was arguing his inference from the evidence and overruled the objection, but cautioned the jury against any consideration thereof from a racial viewpoint. It was in evidence that as defendant was in the act of committing his assault upon the young white woman, Mary Sloan, he made a remark that "he always had things like that with negro women but he liked a * * * white * * * once in a while".

What remarks had preceded those to which objections were interposed are not made clearly to appear. But the record does disclose that this question of racial difference was brought into the case by the evidence, and the remark of the solicitor

above considered is to be viewed as a mere recital of the proof upon that particular matter. Of course, even though the proof may justify the remark, yet undue use thereof should not be made for the purpose and to the extent of arousing racial prejudice. We are unwilling to hold that the remark of the solicitor was such undue emphasis as to justify a reversal of the cause.

We have considered the questions argued in brief by counsel and find no justification for a reversal of the judgment of conviction. But mindful of our duty in cases of this character, we have examined the record for any reversible error, whether argued or not, and conclude that counsel has presented in his brief all matters worthy of separate treatment here.

Finding no error to reverse, the judgment will accordingly be here affirmed.

Affirmed.

All Justices concur, except KNIGHT, J., not sitting.