## TAYLOR *v.* ALABAMA.

No. 721.   Argued April 30 and May 3, 1948.—Decided June 21, 1948.

*Thurgood Marshall* and *Nesbitt Elmore* argued the cause for petitioner. With them on the brief was *Arthur D. Shores.*

*Bernard F. Sykes,* Assistant Attorney General of Alabama, argued the cause for respondent. With him on the brief were *A. A. Carmichael,* Attorney General, and *James L. Screws,* Assistant Attorney General.

MR. JUSTICE BURTON delivered the opinion of the Court.

The question in this case is whether the State of Alabama deprived the petitioner of due process of law under the Fourteenth Amendment[1] to the Constitution of the United States when the Supreme Court of that State denied him permission to file a petition for writ of error *coram nobis* in the Circuit Court of Mobile County, Alabama. We hold that it did not. We hold also that the Alabama procedure, whereby one of its trial courts, by writ of error *coram nobis,* may set aside its own judgment in a criminal case because of an error of fact not apparent on the common law record, is a procedure long recognized by the common law and constitutes due process of law under the Fourteenth Amendment. We hold further that the procedure of that State is in accordance with long-established common law practice and constitutes due process of law under the Fourteenth Amendment in requiring that the permission of the Supreme Court of Alabama be secured by a petitioner before filing such a petition for writ of error *coram nobis,* in a trial court of Alabama,

---

[1] ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; . . . ." U. S. Const. Amend. XIV, § 1.

if it appears that the trial court's judgment already has been affirmed by such Supreme Court.

October 25, 1946, the petitioner, Samuel Taylor, a Negro, residing in Prichard, Mobile County, Alabama, and then 19 years old, was indicted for rape. The act for which he was indicted was an attack made in Prichard, April 12, 1946, on a white girl then 14 years old. October 26, Henri M. Aldridge, of the Mobile County Bar, was appointed by the Circuit Court of that County to represent the petitioner. However, October 28, on counsel's own motion, this order was set aside and, throughout the trial, he represented the petitioner, evidently as counsel of the petitioner's choice or of that of his family. December 30, on motion of the Circuit Court, the same counsel was appointed to prepare and prosecute the petitioner's appeal to the Supreme Court of Alabama. He thus represented the petitioner at least from October 26, 1946, until the date of the judgment of the Supreme Court of Alabama, April 24, 1947, and it is clear that he rendered adequate and competent service.[2]

The trial took place in the Circuit Court of Mobile County, November 19, 1946. After a full hearing in which the petitioner did not take the stand, the trial judge submitted to the jury four alternative forms of verdicts: "guilty of rape as charged in the indictment, and further find he shall suffer death by electrocution"; "guilty of rape, as charged in the indictment, and further find he shall be imprisoned in the penitentiary for —" ("what-

---

[2] The Supreme Court of Alabama, in the appellate proceeding, said: "Counsel appointed by the court for the defense has very diligently presented the questions raised in the record, both by oral argument and a full and complete brief." *Taylor* v. *State*, 249 Ala. 130, 133, 30 So. 2d 256, 258. In the present proceeding that court said: "Upon the trial of this cause the petition admits that the defendant was represented by able counsel." *Ex Parte Taylor*, 249 Ala. 667, 669, and see p. 670, 32 So. 2d 659, 660, 661.

ever you should determine, not less than ten years up to life"); "guilty of carnal knowledge, as charged in the indictment, and further find he shall be imprisoned in the penitentiary for — years" ("whatever you should determine, not less than two nor more than ten"), and "not guilty." The jury returned its verdict in the first form and the petitioner was sentenced to be electrocuted January 9, 1947, at the Kilby Prison, at Montgomery, Alabama. No motion was made for a new trial but notice of appeal was entered and the petitioner's sentence was suspended pending the appeal.

On appeal the case was fully briefed and argued, and, April 24, 1947, the judgment was unanimously affirmed. *Taylor* v. *State,* 249 Ala. 130, 30 So. 2d 256. From a subsequent brief of the State it appears that the petitioner did not apply for a rehearing, that he was later denied clemency by the Governor, and that he was granted a reprieve from the execution of the death sentence until September 19, 1947.

September 18, 1947, the petitioner, represented by new counsel, instituted the present proceeding in the Supreme Court of the State at Montgomery. This proceeding is numbered First Division 308 and is entitled *"Ex Parte Taylor, In Re No. 279 Samuel Taylor Appellant* v. *State of Alabama, Appellee."* It was initiated by a petition to the Supreme Court of Alabama for an order granting the petitioner the right to file a petition in the Circuit Court of Mobile County, Alabama, for writ of error *coram nobis.* The petition in this new proceeding was sworn to by the petitioner and supported by the affidavits of three men who had been in the Prichard jail with him June 29–July 3, 1946. This petition and these affidavits executed in September, 1947, presented for the first time a charge that the petitioner's several confessions, his identification of the prosecutrix and the demonstration of locations which had been made by the petitioner as to his part in the crime, all on July 3, 1946, had been

induced by physical violence administered to him or threats made to him in the Prichard jail prior to that date. Throughout the trial uncontradicted testimony had been given repeatedly that the petitioner had volunteered his confessions and that he had made his disclosures "to get it all off his chest." This attitude was reinforced by the petitioner's ready and complete disclosures of many details otherwise unavailable. In each instance these were consistent with the other evidence in the case and were demonstrative of the unfailing truthfulness of the statements made by the petitioner on July 3. Until the filing of this new proceeding, the petitioner's statements had not been at any point self-contradictory or in conflict with other evidence. His present petition, on the other hand, is in direct conflict with the statements made by him to the Mayor of Prichard and others, July 3, and as to which the Mayor testified at the trial, November 19, 1946. The petitioner now alleges that when, apart from the trial, he "was asked by his said attorney who represented him on the trial . . . if he was mistreated or beaten in any fashion by the law enforcement officers in connection with the giving of said confession he replied in the negative, being uneducated and ignorant as aforesaid, and fearful of further reprisals by said police officers." It does not appear that he made any contrary disclosures to his counsel even during the trial of November 19, 1946, or up to the affirmance of the case on appeal, April 24, 1947, although the petitioner had long been out of the custody of the Prichard police and was aware of the diligence with which his counsel, without success, had sought throughout the trial to uncover possible evidence of violence or other coercion in connection with the petitioner's disclosures made on July 3. It is worthy of notice that, prior to the admission in evidence of each statement of the petitioner in the nature of a confession, his counsel diligently sought to inquire into its voluntariness, and never succeeded in

bringing out evidence of its involuntary character. The trial judge in each instance expressly found the evidence to be admissible. The petitioner's failure to change his original statement to his counsel would of course be consistent with its truthfulness and with all the evidence on record before September 18, 1947.

After the filing of the present proceeding the sentence of execution of the petitioner was further suspended. September 25, 1947, the State of Alabama filed its motion to dismiss the new petition. In that motion it called the attention of the court to the testimony in the original proceeding recently reviewed by that court and contradictory to the new position taken by the petitioner. October 29, 1947, the issue was argued and the State filed an affidavit accompanied by eight photographs which had been taken of the petitioner at 5:37 p. m., July 3, 1946. Seven of these were taken of him in the nude immediately after he had made his several confessions on that day and immediately following the dates June 29 to July 2, inclusive, on which dates the new petition alleges that severe beatings had been administered to him.[3] November 13, 1947, the Supreme Court of Alabama, by a vote of six to one, denied the petition. *Ex parte Taylor,* 249 Ala. 667, 32 So. 2d 659. December 4 it denied a rehearing. March 3, 1948, petition for certiorari was filed here. Because of the important relation of this proce-

---

[3] The State in its brief here says that "it is not unusual for photographs to be taken of defendants in charges of this nature. It is sometimes anticipated by law enforcement officers that a voluntary confession will later be repudiated. Photographs have been taken and introduced in evidence before. *Johnson* v. *State,* 242 Ala. 278 [282], 5 So. 2d 632 [635]." At the original trial no repudiation of the confessions had been made and no testimony had been introduced supporting any charge of coercion of the petitioner by physical violence or otherwise. The photographs were introduced in the case only after affidavits charging coercive physical violence had been filed in the present proceeding.

dure to due process of law under the Fourteenth Amendment, especially in capital cases, we granted certiorari. 333 U. S. 866.

The first question is whether this Alabama procedure to secure a review of a judgment in a criminal case by writ of error *coram nobis* constitutes due process of law under the Fourteenth Amendment. It is clear that it does. This procedure to enable a trial court to correct its own judgment when found by it to have been based upon an error of fact not apparent on the common law record has long been recognized at common law.[4] It survives in varying forms in state practice but it may be that in federal practice its purpose is otherwise served.[5] This

---

[4] "If . . . there was error in fact in the proceedings, not error in law, a writ of error *coram nobis* or *coram vobis* might issue to the trial court to enable it to correct the error. . . . If the cause were in the K. B. [King's Bench], the writ would be *coram nobis*, before us, as the record remaining in the court where the king is constructively; if it were in the common pleas, the writ would be *coram vobis*, before you, since the record remains then before the justices of that court." Cooley's Blackstone's Commentaries (4th ed., Andrews, 1899), Book III, p. *406 n. 2.

See also, opinion by Mr. Justice Clifford, on circuit, in *United States* v. *Plumer*, 27 Fed. Cas. 561, 573, No. 16,056.

[5] See *e. g., Hysler* v. *State*, 146 Fla. 593, 1 So. 2d 628, affirmed, 315 U. S. 411; *McCall* v. *State*, 136 Fla. 349, 186 So. 802; *Chambers* v. *State*, 117 Fla. 642, 158 So. 153; *Lamb* v. *State*, 91 Fla. 396, 107 So. 535; and see as to the federal practice, Fed. R. Crim. P., 32, 33, 35 and 36; *Reid* v. *United States*, 149 F. 2d 334 (C. C. A. 5th); *Young* v. *United States*, 138 F. 2d 838 (C. C. A. 5th); *United States* v. *Gardzielewski*, 135 F. 2d 271 (C. C. A. 7th); *Robinson* v. *Johnston*, 118 F. 2d 998 (C. C. A. 9th); *Strang* v. *United States*, 53 F. 2d 820 (C. C. A. 5th); *United States* v. *Plumer*, 27 Fed. Cas. 561, 571–574, No. 16,056. See also, *United States* v. *Smith*, 331 U. S. 469, 475–476, n. 4; *United States* v. *Mayer*, 235 U. S. 55. Cf. *United States* v. *Norstrand Corp.*, 168 F. 2d 481 (C. C. A. 2d), decided May 26, 1948; Moore and Rogers, Federal Relief from Civil Judgments, 55 Yale L. J. 623, 669–674 (1945–1946).

Court has held expressly that, in the form in which the procedure came before us from Florida, in 1942, it conformed to due process of law under the Fourteenth Amendment. *Hysler* v. *Florida,* 315 U. S. 411.[6] The Supreme Court of Alabama, at least since its decision, in 1943, in *Johnson* v. *Williams,* 244 Ala. 391, 13 So. 2d 683, has followed Florida precedents as to this procedure, and there is no controversy here as to the conformity of the present procedure with that of those precedents.[7]

---

[6] "Such a state procedure of course meets the requirements of the Due Process Clause. Vindication of Constitutional rights under the Due Process Clause does not demand uniformity of procedure by the forty-eight States. Each State is free to devise its own way of securing essential justice in these situations. The Due Process Clause did not stereotype the means for ascertaining the truth of a claim that that which duly appears as the administration of intrinsic justice was such merely in form, that in fact it was a perversion of justice by the law officers of the State. Each State may decide for itself whether, after guilt has been determined by the ordinary processes of trial and affirmed on appeal, a later challenge to its essential justice must come in the first instance, or even in the last instance, before a bench of judges rather than before a jury.

"Florida then had ample machinery for correcting the Constitutional wrong of which Hysler complained. But it remains to consider whether in refusing him relief the Supreme Court of Florida denied a proper appeal to its corrective process for protecting a right guaranteed by the Fourteenth Amendment." *Hysler* v. *Florida,* 315 U. S. 411, 416–417.

See also, *Bute* v. *Illinois,* 333 U. S. 640, 650–654, as to the scope which states enjoy in providing their own procedures within the meaning of due process of law under the Fourteenth Amendment.

[7] See also, *Ex parte Lee,* 248 Ala. 246, 27 So. 2d 147, cert. denied, *sub nom. Lee* v. *Alabama,* 329 U. S. 808; *Ex parte Burns,* 247 Ala. 98, 22 So. 2d 517; *Smith* v. *State,* 245 Ala. 161, 16 So. 2d 315; *Redus* v. *Williams,* 244 Ala. 459, 13 So. 2d 561, cert. denied, 320 U. S. 775; *Brown* v. *State,* 32 Ala. App. 500, 27 So. 2d 226. While, for reasons set forth in the respective opinions, the petition for writ of error *coram nobis* or for permission to file such a petition has been denied

As distinguished from the traditional writ of error enabling a superior court to review an error of law committed by a trial court, the writ of error *coram nobis* brings the error of fact directly before the trial court. However, when the judgment of the trial court already has been affirmed by the judgment of a superior court, then the trial court is bound by the mandate of that superior court. Under those circumstances, it is appropriate to require a petitioner to secure, from that superior court, permission to file his petition for writ of error *coram nobis* in the trial court where he seeks an order setting aside the judgment already affirmed by the superior court. This additional step was included in the Florida procedure which was favorably considered by this Court in *Hysler* v. *Florida, supra.*

It is precisely this step that is before us in the present proceeding. It is the refusal of the Supreme Court of Alabama to grant this permission that is under review. On this point we hold that the Alabama procedure, following both the ancient precedents of the common law and the more recent precedents of Florida and of this Court, does not violate the due process of law required by the Fourteenth Amendment.

We come now to the merits of this particular case. It is charged that the denial by the Supreme Court of Alabama of the permission here sought from it amounted in itself to a denial to this petitioner of the due process of law to which he was entitled under all the circumstances of this case. The petitioner, however, had no mandatory right to the permission. The issue before us is not the issue which would have faced the trial court in the

in each of the foregoing cases in the Supreme Court of Alabama, nevertheless, the Court of Appeals of Alabama, in the last case cited, in 1946, granted leave for a petitioner to present his petition for writ of error *coram nobis* to the Circuit Court of Russell County.

event that the Supreme Court of Alabama had granted permission to the petitioner to file his petition for writ of error *coram nobis* in that court. The proceeding here is not even a review, *de novo,* of the merits of the request made to the Supreme Court of Alabama. The issue before us is limited to a determination of whether, under all the circumstances, the action of the Supreme Court of Alabama in denying permission for the petitioner to file his petition not merely had committed error but had deprived the petitioner of life or liberty without due process of law.

In passing upon this request that court was not bound to accept at face value the allegations of the petition. The issue was not submitted to it as though on a demurrer. That court was called upon to decide not only whether this new petition, if true, presented a meritorious ground for setting aside its previous judgment, but that court, in its supervisory capacity over the enforcement of the law, was called upon to determine also the reasonableness of the allegations made in the petition and the probability or improbability of their truth. The standard by which the Supreme Court of Alabama seeks to guide its determination in such a case has been stated by it in *Johnson* v. *Williams,* 244 Ala. 391, 394, 13 So. 2d 683, 686, as follows:

> "We recognize in this State, as does the Supreme Court of Florida (Hysler v. State, 146 Fla. 593, 1 So. 2d 628), that the common law writ of error coram nobis is available . . . and is the appropriate remedy to be followed. See 24 C. J. S., Criminal Law, § 1606. The rule in that State, which we think is just and proper, and is here adopted, calls for a petition to this Court, when the judgment of conviction has been here affirmed, for leave to petition the circuit court where the conviction was obtained for

a writ of error coram nobis to review such judgment. Such application should make an adequate showing of the substantiality of the petitioner's claim to the satisfaction of this Court. A mere naked allegation that a constitutional right has been invaded will not suffice. The application should make a full disclosure of the specific facts relied upon, and not merely conclusions as to the nature and effect of such facts. The proof must enable this Court to 'ascertain whether under settled principles pertaining to such writ the facts alleged would afford at least prima facie just ground for an application to the lower court for a writ of error coram nobis.' And in the exercise of our discretion in matters of this character, *this Court should look to the reasonableness of the allegations of the petition and to the existence of the probability of the truth thereof.* The Supreme Court of the United States in Hysler v. State of Florida, 315 U. S. 411, 62 S. Ct. 688, 691, 86 L. Ed. 932, said that 'each State may decide for itself whether, after guilt has been determined by the ordinary processes of trial and affirmed on appeal, a later challenge to its essential justice must come in the first instance, or even in the last instance, before a bench of judges rather than before a jury', and that the procedure outlined above, which we have adopted from the Florida Court, meets the requirements of the due process clause of the Constitution." (Italics supplied.)

It remains to apply the test to this case. There is a presumption of validity attached to the factual basis for the original judgment which was rendered about 18 months ago after a jury trial. It has been affirmed unanimously by a Supreme Court of seven judges and, in this very proceeding, that court reached a conclusion, by a vote of six to one, that "the averments of the [new]

petition are unreasonable and that there is no probability of truth contained therein, and that the proposed attack upon the judgment is not meritorious." *Ex parte Taylor, supra,* pp. 670–671.

In reviewing that conclusion, we emphasize the following considerations:

Like every capital case, it is one of serious moment. In the state courts and here, consideration must be given to each material issue of fact and law. Both opinions handed down by the Supreme Court of Alabama disclose an appreciation by its members of their constitutional obligations to the petitioner, the State and the nation.

Since the petitioner was sentenced, November 19, 1946, to pay the penalty which the law and the jury have prescribed for the crime of which he was then convicted, the execution of the sentence has been suspended repeatedly in order that the fullest consideration might be given by appropriate authorities to every substantial argument presented on his behalf. The Supreme Court of Alabama has stated its appreciation of its responsibilities in this case as follows:

> "We are fully mindful of petitioner's rights under the due process clause of the Federal Constitution and the responsibility resting upon this court in cases of this character. We not only are mindful of responsibility so far as this defendant is concerned, but also feel like responsibility to society in the enforcement of the criminal laws of our state." *Ex parte Taylor, supra,* p. 669.

If the new petition and its supporting affidavits stood alone or had to be accepted as true, the issue would be materially different from what it is. The Supreme Court of Alabama, however, read this petition and these affidavits, as we must read them, in close connection with the

entire record already made in the case. They must be tested in that context for their reasonableness, the probability of their truth, the effectiveness of the attack they make on the original judgment and their relationship to the general enforcement of law with justice to all.

The new petition and the affidavits have inherent elements of strength and weakness bearing upon their credibility to which the Supreme Court of Alabama was entitled to give consideration. In contrast to the situation presented in many other cases where a petition for writ of error *coram nobis* has been relied upon, this petition contains no charge that there was any false testimony presented at the trial (except for its reference to testimony by Sergeant Wilkes which reference the record shows is plainly erroneous). The petitioner bases his claims upon evidence not presented at the original trial. This consists of evidence of coercion alleged to have been applied to the petitioner by police officers at times not covered by the testimony given at the original trial. All of this additional evidence, if true, must have been known to the petitioner at the time of his trial but it is claimed that he concealed it even from his own counsel. It is newly disclosed evidence, rather than newly discovered evidence, and its credibility in the eyes of the Supreme Court of Alabama may well have been affected by that fact. The new petition does not deny the guilt of the petitioner or deny any of the acts upon which his conviction was based. It claims merely that the coercion applied to the petitioner was such that it would be a sufficient basis for the exclusion, from a new trial, of the evidence of certain confessions and subsequent conduct of the petitioner that was used against him at the original trial.

The petition contains no charges that the state's attorney made use of any false testimony or that he knew of any of the coercion relied upon in the new petition.

More serious than this lack of compelling force to the petitioner's attack are the following circumstances which were appropriate for consideration by the Supreme Court of Alabama in passing upon the probable truth or falsity of those allegations:

1. The only affidavits presented are those of the petitioner himself and of three persons, each of whom was an associate of the petitioner, arrested and detained with him by the Prichard police, June 29–July 3, 1946, under a charge of some crime not connected with the rape. One of these affiants is serving a ten-year sentence in the Kilby Prison for robbery. With the exception of one instance on June 29, none of the three associates claims to have seen the alleged beatings of the petitioner, although each claims to have heard the beatings being administered. The charges as to the alleged beatings are made in such extreme terms that marks of such beatings, if they actually occurred, probably would have been evident on July 3, whereas the testimony at the trial as to the physical condition of the petitioner on that day is to the contrary and the appearance of the petitioner in the photographs, taken on July 3, was found by the Supreme Court of Alabama to lend no support to these statements in the affidavits.

2. The petition charges Sergeant C. D. Wilkes of the Prichard police force with perjuring himself "by falsely testifying that Petitioner was not subjected to any mistreatment in connection with making said confession." Sergeant Wilkes, however, gave no testimony on that subject. At the trial he testified only as to his being on duty when the petitioner was arrested on June 29, as to the identification made of the petitioner by the prosecutrix, as to the fact that he talked with the petitioner at 9 p. m. on July 2, and as to the manner in which the petitioner had volunteered to make his confession at

3 a. m. on July 3. Nothing was said by Sergeant Wilkes on direct or cross-examination or was even asked of him on cross-examination as to any mistreatment of the petitioner or as to any subject as to which there appears to be any conflict of fact. The record of the trial demonstrates on its face that the charge of perjury is without foundation.

3. In the trial record there is no evidence, either on direct or cross-examination of any witness, of any physical or mental coercion, or of any inducement or promise bearing upon the volunteered, detailed and repeated confessions by the petitioner of his conduct, the identification of his victim or his designation, by sketch and on the premises, of the localities of material occurrences. Although the alert and diligent counsel for the petitioner endeavored at the trial to test on each occasion the voluntariness of every statement in the nature of a confession that was made by the petitioner, he did not succeed in convincing the court that any of them should be excluded as having been involuntarily made. His efforts resulted in nothing more than establishing that many witnesses had little or no knowledge as to the presence or absence of coercion during extended periods prior to the petitioner's confessions, although they testified to the voluntariness of the confessions at the time they were made and for varying periods prior thereto. The Supreme Court of Alabama said: "The question of the voluntary character of the confession was duly considered and treated in the opinion on former appeal. Nor did the record contain the slightest indication that the defendant, a Negro twenty years of age, was ignorant and in any manner subnormal." *Ex parte Taylor, supra,* p. 669.

4. No witness testified at the trial to having seen any evidence of physical violence on the body of the petitioner. G. M. Porter, the member of the Prichard police who was

on duty much of the time at the jail and who brought the petitioner from his cell in answer to petitioner's request on July 3 for an opportunity to make his initial confession, expressly testified on cross-examination that at that time there were no signs of the petitioner having been mistreated. The photographs taken that afternoon are described in the opinion of the Supreme Court of Alabama as disclosing "no indications on the body of any physical violence as set forth in the petition." *Ex parte Taylor, supra,* p. 669.

5. Still more striking are the statements made by the petitioner himself on July 3. These were made under circumstances so disarming and self-confirmatory as to suggest the reasonableness of their credibility by the jury and later by the Supreme Court on its review of the record. When read in full, the statements of the petitioner throughout July 3 are so free in manner, detailed in content and affirmative in their nature that they carry obvious earmarks of being the truth. The record shows that at 3 a. m. on July 3 the petitioner called from his cell that he wished to tell "all of it" and "get it all off his chest." Shortly thereafter, he told his story before the Mayor of Prichard and others. He repeated it to still others who came in later. He volunteered further details while riding in a car to the scene of the crime. His statements in the car were then and there written down by an assistant county solicitor, were signed by the petitioner and were supplemented by a sketch which the petitioner drew himself. These signed statements and this sketch were introduced in evidence on cross-examination of the assistant county solicitor who had been called as a witness on behalf of the petitioner. Later that day, the petitioner made a further detailed statement in question and answer form. He personally identified the victim of his crime in the presence of several witnesses and she identified him.

In his testimony given in the presence of the Mayor, the petitioner stated unequivocally that he had not been beaten or coerced. Excerpts from this testimony are set forth in the margin as retold by the Mayor at the trial.[8]

---

[8] Glen V. Dismukes, Mayor of Prichard, on cross-examination by counsel for the petitioner, testified as to the appearance and conduct of the petitioner immediately preceding his initial confession at about 3 a. m. July 3, as follows:

"Q. And you do not know whether, or not, they actually inflicted any violence on him before you got there?

"A. He didn't appeared [appear] to be frightened in any way.

"Q. But you don't know. He didn't appear to be frightened?

"A. No.

"Q. Did he seem to be wholly at ease?

"A. Perfectly at ease.

"Q. I see. You came in there at three o'clock in the morning, and found this negro boy and two policemen, and he seemed to be perfectly at ease?

"A. Yes, sir.

"Q. Didn't seem to be upset at all?

"A. Not at all.

"Q. Didn't appear to be nervous?

"A. No.

"Q. Perfectly friendly?

"A. Rather pleasant.

"Q. Rather pleasant, well, and you don't know whether, or not, after you talked to him that they made any promises or threats, do you, Mr. Dismukes?

"A. No, sir."

Later that day the Mayor visited the scene of the crime with the petitioner and others and, after their return to the office of the Chief of Police, the petitioner made replies to questions asked of him by the State Solicitor. These questions and answers were recalled by the Mayor in his oral testimony and were thus introduced at the trial. Some of this testimony of the Mayor in response to direct examination by the State Solicitor was as follows:

"Q. Now, Mr. Dismukes, on that time and place there in the office to which we referred, do you recall me asking him [the petitioner], 'When were you arrested on this charge, Samuel?', and him answering,

6. The petition alleges that the petitioner falsely told his own attorney that he had not been beaten and that he so told his attorney because of fear of further reprisals. This attorney was the one who had been appointed by the court to defend the petitioner and later privately retained for the petitioner. Still later he was appointed by the court to handle the case on appeal. There is nothing other than this petition to suggest that the petitioner at any time misled his attorney, or lacked confidence in him, or had reason to lack confidence in him. Both the record and the attorney's conduct of the trial and appeal are thoroughly consistent with the petitioner's having told his attorney that he had not been beaten and there is nothing, other than the new petition, to show that such statement was false. The trial took place on November 19, 1946, and in that connection petitioner was detained

'I was arrested Saturday night around midnight.' Do you recall that?

"A. Yes, sir.

"Q. Then do you recall me asking, 'And you have been in jail since that time?' and he answering, 'Yes, sir.'

"A. Yes, sir.

"Q. Do you recall me saying, 'Now, since you have been in jail, Samuel, have you been properly treated?' Do you recall him answering, 'Yes, sir.'

"A. Yes, sir.

"Q. Do you recall me asking him, 'Have any of the officers mistreated you, or threatened to beat you, or offered you any reward, to get you to talk?' And his answer being, 'No, sir.'

"A. That is right.

"Q. Do you recall me asking him, 'Have any of them beat you or kicked you?' And he answering, 'No, sir.'

"A. That's right.

"Q. Do you recall me asking him, 'Now, a few minutes ago when Dr. Grubbs took pictures of you naked, were there any marks on your body that were put there by the police?' And him answering, 'No, sir.'

"A. Yes, sir."

in the Mobile County jail rather than with the Prichard police. After his conviction the petitioner was sent to Kilby Prison in Montgomery, over 200 miles away.

The Supreme Court of Alabama concluded:

> "The trial was conducted with much care. There is nothing in the record on former appeal to indicate the slightest appeal to prejudice, nor was a single untoward incident recorded. We think it is asking entirely too much of the court to believe that this defendant, in the secrecy of consultation with his own able counsel, would say to counsel in substance that there was nothing upon which to base an objection to his confessions, solely because he was under fear generated by treatment which he claims was accorded him on July 3, nearly four months previous." *Ex parte Taylor, supra,* p. 670.

The petitioner's trial attorney has submitted no affidavit and has not appeared in the present proceeding.

For these reasons, we conclude not only that the Alabama procedure is in accordance with due process of law under the Fourteenth Amendment, but that the denial by the Supreme Court of Alabama of the permission thus sought by the petitioner to file a petition for writ of error *coram nobis* in the Circuit Court of Mobile County, Alabama, was not, under all the circumstances, such an arbitrary action as in itself to amount to a deprivation of due process of law.

The Supreme Court of Alabama was acting within its constitutional authority when, in its supervisory capacity over the procedure in the criminal trials of that State, it denied to petitioner the right to file this petition for writ of error *coram nobis* and stated that "Upon due consideration we conclude that the averments of the petition are unreasonable and that there is no probability

of truth contained therein, and that the proposed attack upon the judgment is not meritorious." *Ex parte Taylor, supra,* pp. 670–671.

Accordingly, the judgment of the Supreme Court of Alabama is

*Affirmed.*

Mr. Justice Black took no part in the consideration or decision of this case.

Mr. Justice Frankfurter, concurring.

The dissenting opinion is written as though this Court were a court of criminal appeals for revision of convictions in the State courts. It is written as though we were asked to consider independently, and as a revisory appellate tribunal which had power to do so, whether a conviction in the courts of Alabama was based upon a coerced confession. One would hardly gather from the dissenting opinion that a trial was had in Alabama under the best safeguards to which a defendant in our courts is entitled; that he was defended by counsel concededly able who exerted all his professional skill on behalf of his client; that the trial judge guided the proceedings with competence and scrupulosity; that then followed a careful review of the trial on appeal, resulting in an affirmance of the judgment of conviction by the highest court of Alabama.

The Due Process Clause of the Fourteenth Amendment does require still further protection. A State must furnish corrective process to enable a convicted person, even after such proceedings as I have outlined, to establish that in fact a sentence was procured under circumstances which offend "the fundamental conceptions of justice which lie at the base of our civil and political institutions." *Mooney* v. *Holohan,* 294 U. S. 103, 112. Such re-insurance that no one is punished in violation of basic notions of justice does not of course require determination of such

a claim by another jury. "Each State may decide for itself whether, after guilt has been determined by the ordinary processes of trial and affirmed on appeal, a later challenge to its essential justice must come in the first instance, or even in the last instance, before a bench of judges rather than before a jury." *Hysler* v. *Florida,* 315 U. S. 411, 417.

Alabama, it cannot be denied, provides for such corrective process. If Alabama chose to leave the determination of the reasonableness of such a claim as is here made finally and on the merits to the Supreme Court of Alabama, of course we could not say that Alabama was disregardful of the requirements of due process. Nor, in view of the circumstances of this case, could we in all fairness say that the Supreme Court of Alabama could not have reasonably rejected that claim—made as belatedly as it was and having regard to the human probabilities of the situation. If the Supreme Court of Alabama could, as a matter of due process, have rejected on the merits the claim that the very foundation of the original proceedings, resulting in the judgment of conviction, was undermined because of an infraction of the United States Constitution, it would disregard reason for this Court to hold that a conscientious State court could not have concluded, as the Supreme Court of Alabama has concluded, that, on the totality of the circumstances, the probabilities were so strong against the truth of the allegations on which the claim was based that it did not require a hearing of witnesses to reject it. In reaching such a conclusion the Supreme Court of Alabama was entitled to consider the circumstances of the original trial, the manner of its conduct by the trial judge, the professional ability with which the defendant was represented, the behavior of the accused throughout the proceedings, and, in the light of all these circumstances, the weight to be attached to the affidavits on which his present petition is based.

For me, the essence of the decision of the Alabama Supreme Court is contained in the following sentence: "We think it is asking entirely too much of the court to believe that this defendant, in the secrecy of consultation with his own able counsel, would say to counsel in substance that there was nothing upon which to base an objection to his confessions, solely because he was under fear generated by treatment which he claims was accorded him on July 3, nearly four months previous." 249 Ala. 667, 670. Since I cannot deem the reasoning by which this conclusion was reached as unsustainable in reason, I am not entitled to reject it, and I therefore agree with this Court's opinion.

But this merely carries me to sustaining the judgment of the Alabama Supreme Court. There is not now before us any right that the petitioner may have under the Judicial Code to bring an independent *habeas corpus* proceeding in the District Court of the United States.[1]

MR. JUSTICE MURPHY, dissenting.

One of the fixed principles of due process, as guaranteed by the Fourteenth Amendment, is that no conviction in

---

[1] See also § 2254 of the legislation revising the Judicial Code, H. R. 3214, 80th Cong., 2d Sess., as passed by Congress on June 16, 1948:

"State custody: remedies in State courts.

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." (Congressional Record, June 16, 1948, p. 8676.)

a state court is valid which is based in whole or in part upon an involuntary confession. *Lee* v. *Mississippi,* 332 U. S. 742, 745. Wherever a confession is shown to be the product of mental or physical coercion rather than reasoned and voluntary choice, the conviction is void. And it is void even though the confession is in fact true and even though there is adequate evidence otherwise to sustain the conviction.

This principle reflects the common abhorrence of compelling any man, innocent or guilty, to give testimony against himself in a criminal proceeding. It is a principle which was written into the Constitution because of the belief that to torture and coerce an individual into confessing a crime, even though that individual be guilty, is to endanger the rights and liberties of all persons accused of crime. History has shown that once tyrannical methods of law enforcement are permitted as to one man such methods are invariably used as to others. Brutality knows no distinction between the innocent and the guilty. And those who suffer most from these inquisitorial processes are the friendless, the ignorant, the poor and the despised. *Chambers* v. *Florida,* 309 U. S. 227, 237–238. To guard against this evil, therefore, the Constitution requires that a conviction be set aside whenever it appears that a confession introduced at the trial is involuntary in nature.

The problem in this case is whether the petitioner, having been found guilty of rape and sentenced to death, is now entitled to a hearing on his allegation that the confession introduced at the trial was obtained by coercive methods. The Supreme Court of Alabama refused to allow a hearing on the theory that the allegation was unreasonable. In affirming that refusal, however, this Court relies upon considerations which are either irrelevant, inconclusive or contrary to the constitutional principle just discussed:

(1) The Court emphasizes that the petition does not deny the guilt of petitioner or deny any of the acts upon which his conviction was based. But whether petitioner be innocent or guilty has no bearing whatever on the reasonableness of the allegation that the confession was coerced. Even if we assume that petitioner is guilty beyond all doubt, the due process clause still invalidates his conviction if it was obtained through use of a coerced confession. The thrust of that clause is directed toward the voluntariness of the confession, not toward the innocence of the accused.

(2) Significance is given to the fact that the statements made by petitioner and introduced at the trial as his confession "are so free in manner, detailed in content and affirmative in their nature that they carry obvious earmarks of being the truth." Here again the Court misconceives the nature and purpose of the constitutional principle in issue. Coerced confessions are outlawed by the due process clause regardless of the truth or falsity of their content. It is just as uncivilized to brutalize an accused person into telling the truth as it is to force him to fabricate a confession. The torture and coercion are what the Constitution condemns. Hence an allegation that a confession is involuntary is not rendered unreasonable because of the apparent truthfulness of that confession.

(3) The Court refers to the absence of any evidence at the original trial of any physical or mental coercion or of any inducement or promise bearing upon the confession made by petitioner. But because he allegedly was still suffering from the coercive effects of the beatings, petitioner made no effort at the trial to prove that he had been subject to undue pressure prior to 3 a. m., July 3, 1946, which is the crucial period. Most of the witnesses at the trial admitted ignorance as to the events occurring before that time. Thus the proof at the trial

is at least consistent with the allegation now made and is not such as to render the allegation unreasonable.

(4) Objection is made that the only affidavits supporting the allegation are those of petitioner himself and of three persons associated with him. I fail to see, however, how such an objection indicates the unreasonableness of the allegation. The affidavits are those of four Negroes arrested on the street at the same time and detained on a robbery charge. Their common arrest and detention do not necessarily render untrustworthy any affidavits on the part of petitioner's three companions. A statement by a friend or associate can be just as probative for present purposes as a statement by an enemy or a disinterested person. It is not our function now to weigh the effect which the relationships of the four affiants may have on the verity of their statements. Sufficient it is that the statements are reasonable and pertinent on their face. Moreover, the jail sentence now being served by one of the companions does not, standing alone, destroy the force of his affidavit unless we are to indulge in the unrealistic assumption that nothing said by a prison inmate is to be given credence. Overlooked in this respect is the fact that two of the companions are now free individuals who presumably lack what the Court feels is the taint of imprisonment. I can only conclude, therefore, that if there is anything wrong with these affidavits it does not appear in the background of the affiants.

(5) The Court observes that, except for one instance, none of the three associates claims to have seen the alleged beatings of the petitioner; all they did was to hear the brutality being inflicted. But I had never supposed that an allegation of coercion was any less reasonable because the alleged torture did not take place before the very eyes of disinterested witnesses. A moment's reflection will demonstrate that coercion is most likely to occur in

secret and to be witnessed, if at all, through the ears of other inmates. Whether there is any truth to the claimed overhearing, of course, is a matter for the trier of facts and does not affect the reasonableness of the claim itself.

(6) The alleged beatings are said to be so extreme in nature as to be evident on July 3, when photographs of the petitioner were taken. Suffice it to say that photographs can be most deceiving, especially photographs of a person like petitioner. The Supreme Court of Alabama realized this fact and placed no particular reliance upon the photographs; the dissenting judge, however, was convinced that the pictures did show numerous marks on petitioner's body. Under these circumstances, we should refrain from judging the reasonableness of the allegation by what we think appears in deceptive photographs.

(7) The statement that Sergeant Wilkes perjured himself at the trial apparently has no foundation, as the Court points out. But this factor has no particular relevance to the reasonableness of the claim of coercion. Such an error should not prejudice petitioner's entire allegation.

(8) It is said that there is nothing other than the petition to show that petitioner concealed the alleged coercion from his attorney at the trial. This fact may be conceded, but it hardly warrants treating the claim as unreasonable. The coercion conceivably ·could have been so effective as to shut petitioner's lips all through the trial and to silence him even as to his own attorney. We should not close the door to proof of that possibility.

Thus I find inadequate the considerations relied upon by this Court to affirm the judgment below. Petitioner has made an allegation of the most serious nature, one that reflects gravely upon the law enforcement processes of Alabama. He claims that for four nights preceding the confession he was "brutally beaten, kicked and bruised in an effort to obtain said confession" and put in "great fear for his future safety." Cf. *Chambers* v. *Florida*,

*supra.* Three other persons are willing to testify that they heard blows struck and heard petitioner "scream and holler many times." A perusal of the record reveals an absence of any factor that would render this allegation completely sleeveless. Doubts may reasonably exist as to the merits of the allegation. But they are doubts which should be resolved at a full hearing. That is all that petitioner now asks. And I believe that a denial of his request to have the opportunity to prove his allegation is a denial of due process of a most flagrant nature.

We are dealing here with a matter of life and death, a matter of constitutional importance. If it were our function to speculate upon the effect petitioner's confession had on the jury's verdict, it would seem clear that the confession was of crucial importance. There was little else to sustain the verdict, the prosecutrix's identification of petitioner being somewhat weakened by the fact that she had previously made a positive and mistaken identification of another Negro. And the confession undoubtedly affected the jury's choice from among four alternative forms of the guilty verdict of the one that imposed the death sentence. Cf. *Andres* v. *United States,* 333 U. S. 740. If the confession was in fact coerced, therefore, the conviction itself was thoroughly impregnated with the coercion. But the degree of such impregnation is irrelevant under the due process clause. As we have seen, it is enough if a coerced confession was actually introduced at the trial. The conviction then becomes void under well established rules. Where there is a reasonable possibility that a conviction is void for this reason, I think that an opportunity should be afforded a condemned man to demonstrate his case. Petitioner's execution is no answer to the allegation which he has raised.

Fortunately, this Court has not yet made a final and conclusive answer to petitioner's claim. All that has been

decided here is that the Supreme Court of Alabama did not err in declining to permit him to file a petition for writ of error *coram nobis* in the Alabama courts. Nothing has been held which prejudices petitioner's right to proceed by way of *habeas corpus* in a federal district court, now that he has exhausted his state remedies. He may yet obtain the hearing which Alabama has denied him.

MR. JUSTICE DOUGLAS and MR. JUSTICE RUTLEDGE join this dissent.